Charles Earl Williams v. The State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-317-CR

     CHARLES EARL WILLIAMS,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 82nd District Court
Falls County, Texas
Trial Court # 7087
                                                                                                                

O P I N I O N
                                                                                                                

      Charles Earl Williams was charged with two counts of aggravated assault and one count of
endangering a child. A jury found Williams guilty of all three counts and also found that a deadly
weapon had been used in the commission of all three offenses. Punishment was assessed by the
jury at twenty years’ confinement plus a $2,500 fine on both aggravated assault counts, plus two
years’ confinement and a $2,500 fine for endangering a child, his sentences to run concurrently. 
Williams appeals, presenting two issues for review. He first asks whether there is a fatal variance
between the proof offered at trial and the indictment because the indictment named the child
allegedly endangered as Ricky Lee Brown, but testimony revealed that he was actually Ricky Lee
Moore. He also asks whether the omission of mandatory charge language in the punishment
charge constitutes a denial of due process which necessitates a remand for a new punishment
phase. We will affirm the judgment. 
FACTS
      April 1, 1997, Williams went to Wal-Mart with his girlfriend, Tracy Brown, Ricky Lee
Moore (Brown’s son), and Mary Ann Hering. While shopping for clothing for Brown’s children,
Brown and Williams began to argue because Brown would not buy any clothing for Williams’ son. 
They returned to the car which Hering was driving and Williams got in the back, while Brown and
Moore sat in the passenger’s seat. Williams displayed a gun, threatened Brown and Hering, and
pulled the trigger on the gun, although the safety was in place. Brown went inside Wal-Mart and
asked a clerk to call 9-1-1. Williams was arrested. Hoping for reconciliation, Brown refused to
obey her subpoena to appear in court. She was brought under a writ of attachment and
involuntarily testified as a State’s witness. 
ARTICLE 21.07
      Williams’ first issue complains that there is a fatal variance in proof as to the alleged victim
of child endangerment. Because the indictment alleged that Ricky Lee Brown had been
endangered and the evidence at trial showed his name to actually be Ricky Lee Moore, Williams
alleges that he should be acquitted. Evidence adduced at trial regarding the child’s name showed
that he was also known as Ricky Lee Brown. 
      Tracy Brown, the child’s mother, was hostile to the prosecution. When asked whether Moore
was also known as Ricky Lee Brown, she answered “no.” She also initially denied that it would
be “fair” to say that somebody might assume his last name was Brown. She eventually conceded
that one could assume his name was Brown because her name was Brown. Hering testified that
the child was known as Ricky Lee Brown:
      Q:  What is [Williams’] girlfriend’s son’s name?
      A:  We call him—his nickname is Pooh.
      Q:  Is that also Ricky Lee Brown?
      A:  Yes.
      Article 21.07 of the Code of Criminal Procedure controls whether a name is sufficiently
alleged in the indictment. It states:
In alleging the name of the defendant, or of any other person necessary to be stated in the
indictment, it shall be sufficient to state one or more of the initials of the given name and the
surname. When a person is known by two or more names, it shall be sufficient to state either
name. When the name of the person is unknown to the grand jury, that fact shall be stated,
and if it be the accused, a reasonably accurate description of him shall be given in the
indictment.

Tex. Code Crim. Proc. Ann. art. 21.07 (Vernon Supp. 1998).


 The name of the victim must
be alleged in the charging instrument and proved beyond a reasonable doubt. Blankenship v.
State, 785 S.W.2d 158, 159 (Tex. Crim. App. 1990). When a person is known by two or more
names, article 21.07 allows the State to allege either name in the indictment. Id. (citing Little v.
State, 130 Tex.Crim. 603, 95 S.W.2d 141 (1936)). Article 21.07 requires only that the person
be known by two names, not that he or she be "commonly" known by such names. Id. Because
there was evidence that Ricky Lee Moore was also known as Ricky Lee Brown, the issue was
raised and was properly left for the jury. Blankenship, 785 S.W.2d at 160; Brown v. State, 843
S.W.2d 709, 712 (Tex. App.—Dallas 1992, pet. ref’d).
      Williams relies on our holding in Scott v. State, 905 S.W.2d 783 (Tex. App.—Waco 1995,
pet. ref’d), to support his contention that an acquittal is necessary. In Scott, the majority stated:
The State argues that Roy Gann's testimony is sufficient to create a fact question for the jury
to determine if he is also known as "Ray Gann." We reject this contention for two reasons. 
First, the sufficiency of the evidence is determined with reference to the jury charge. The
charge requires the jury to find that a jailer named "Ray Gann" was assaulted; unlike
Blankenship, nowhere in the charge is mention made of the possibility that Gann is known by
another name. Thus, the jury was not authorized to convict Scott on this theory. Second,
Gann's testimony that he had "been confused as Ray before" and that his name was "quite
often mistaken" in publications does not establish that he was known, i.e., "generally
recognized" by somebody, as "Ray Gann.” 

Id. at 786 (citations omitted.) We now disavow our holding in Scott. “A fair application of
Blankenship v. State, 785 S.W.2d 158, 159-60 (Tex. Crim. App. 1990), and article 21.07 of the
Code of Criminal Procedure would authorize the jury to convict [Williams] . . . . If evidence
exists that the victim was known by the name alleged in the indictment, then the issue is raised and
is properly left for the jury to determine.” Scott, 905 S.W.2d at 786 (Vance, J., dissenting)
(citing Brown, 843 S.W.2d at 712; Stahley v. State, 814 S.W.2d 415, 417 (Tex. App.—Dallas
1991, pet. ref'd)).


 Issue one is overruled. 
OMISSION OF MANDATORY CHARGE LANGUAGE
      Article 37.07, section 4(a) of the Code of Criminal Procedure mandates that certain
instructions regarding parole eligibility be in the punishment charge if there has been a deadly
weapon finding. A portion of that instruction was erroneously left out of the charge:
Under the law applicable in this case, if the Defendant is sentenced to a term of
imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty years, whichever is less, without consideration of any
good conduct time he may earn. If a Defendant is sentenced to a term of less than four years,
he must serve at least two years before he is eligible for parole. Eligibility for parole does
not guarantee that parole will be granted.


 

Although submission of the parole instruction is mandatory, any error caused by the trial court's
initial failure to include it in the charge was arguably waived by Williams’ failure to object to its
absence. See Nixon v. State, 940 S.W.2d 687, 691 (Tex. App.—El Paso 1996, pet. ref’d) (citing
Kinnamon v. State, 791 S.W.2d 84, 96 (Tex. Crim. App. 1990)); Ramos v. State, 831 S.W.2d
10, 17 (Tex. App.—El Paso 1992, pet. ref'd). 
      Williams argues that this was an error of constitutional magnitude requiring automatic
reversal. We disagree. The United States Constitution does not require a parole instruction in
state courts. Myres v. State, 866 S.W.2d 673, 674 (Tex. App.—Houston [1st Dist.] 1993, pet.
ref’d) (citing O’Bryan v. Estelle, 714 F.2d 365, 389 (5th Cir. 1983)). No Texas case has held that
omitting the instruction requires automatic reversal. Id. Thus, because Williams failed to object,
we will not reverse unless he was egregiously harmed by the omission. Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984).
      A parole instruction may favor the State or the defendant. Myres, 866 S.W.2d at 674. The
legislature intended for the instruction to increase the length of sentences set by juries. Id. (citing
Grigsby v. State, 833 S.W.2d 573, 576 (Tex. App.—Dallas 1992, pet. ref’d)). However, if a jury
learned from the instruction that the defendant would serve longer than expected, the jurors could
be influenced to assess less time. Id. As Williams points out, it is impossible to inquire into the
jury’s deliberations; thus, a finding of harm would be mere speculation. Id. 
      The court instructed the jury not to consider the extent to which good conduct time may be
awarded to or forfeited by “this particular defendant.” He further instructed the jury “not to
consider the manner in which the parole law may be applied to this particular defendant.” We
presume that the jury followed the court’s instructions and did not consider parole. Id. Williams
claims that the jury may have imposed the maximum sentence because of a concern that he could
earn good conduct time that would decrease the period of time which he will be required to serve
in prison. This, however, assumes that the jury disregarded the court’s instructions. 
      Williams has failed to show egregious harm. Almanza, 686 S.W.2d at 171. Issue two is
overruled. 
      The judgment is affirmed.
                                                                                                                         BILL VANCE
                                                                                 Justice
Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed August 26, 1998
Publish